# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

|  |  |  |
|---|---|---|
| DONNELL FROST, SR., | ) | |
| Movant, | ) ) ) | |
| v. | ) ) | Cv. No. 2:14-cv-02896-JPM-cgc<br>Cr. No. 2:10-cr-20219-JPM |
| UNITED STATES OF AMERICA, | ) ) ) | |
| Respondent. | ) ) | |

### ORDER DENYING MOTION PURSUANT TO 28 U.S.C. § 2255, DENYING CERTIFICATE OF APPEALABILITY, CERTIFYING THAT AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH AND DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

Before the Court is a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion") filed by Movant, Donnell Frost, Sr., Bureau of Prisons register number 23667-076, who is currently incarcerated at the low security Federal Correctional Institution in Yazoo City, Mississippi. (§ 2255 Mot., *Frost v. United States*, No. 2:14-cv-02896-JPM-tmp (W.D. Tenn.), ECF No. 1.) For the reasons stated below, the Court DENIES the § 2255 Motion.

## I. PROCEDURAL HISTORY

### A. Criminal Case Number 10-20219

On May 25, 2010, a federal grand jury returned a single-count indictment, charging that, on or about January 10, 2010, Frost, a convicted felon, possessed an Omega .38 caliber derringer in violation of 18 U.S.C. § 922(g). (Indictment, *United States v. Frost*, No. 2:10-cr-20219-JPM

(W.D. Tenn.), ECF No. 1.) The factual basis for the charges is stated in the presentence report ("PSR"):

### The Offense Conduct

4. According to the investigative file, on January 10, 2010, officers responded to an armed party call at 4248 Navaho in Memphis, TN. Upon arrival officers were advised by the victim, D.F., 15 years old, that his father, **Donnell Frost, Sr.** had punched D.F. repeatedly in the head and face and that **Frost** had fired a shot at D.F.

5. D.F. advised that he had returned home to get his school uniform at which time **Frost** told D.F. he could not get his clothes and ordered him to get out of the house. D.F. asked his mother, Linda Anderson, who was also present in the home, if he could use her cell phone. Ms. Anderson handed D.F. the phone at which time **Frost** attempted to take the phone and followed D.F. out of the house.

6. D.F. refused to give the phone to **Frost**. At that point, **Frost** slammed D.F. to the ground and began punching him in the back of the head. **Frost** and D.F. engaged in a physical struggle. D.F. was able to get away from **Frost** who yelled at him, "Bitch, I told you stay away from my house." **Frost,** who began chasing D.F., produced a pistol, then pointed and fired one shot at D.F. who advised that he saw a flash from the gun.

7. D.F. contacted the police. Officers soon met D.F. down the street from the home and advised him to stay there due to the dangerous situation. Officers observed visible knots on D.F.'s head and grass stains on his clothes. Officers went to 4248 Navaho where **Frost** answered the door. After a brief struggle, **Frost** was detained and placed in the squad car. Officers attempted to obtain consent to search the residence from Ms. Anderson who declined because the home belonged to **Frost**.

8. Officers went outside to the squad car and obtained verbal consent from **Frost** to search his residence. **Frost** advised the officers that he had no firearms in his home and nothing to hide. **Frost** refused to sign a written consent. From between the box spring and mattress in **Frost's** bedroom, officers recovered an *Omega .38 caliber Derringer, RG17, serial number 12249, loaded with one live .38 caliber round and one spent .38 caliber round*.

. . . .

12. At the time of his arrest, **Frost** was a convicted felon. The firearm was not manufactured in the State of Tennessee and therefore traveled in interstate commerce.

(PSR ¶¶ 4-8, 12.)

Pursuant to a written plea agreement, Frost appeared before the Court on June 9, 2011, to plead guilty to Count 1 of the Indictment. (Min. Entry, *id.*, ECF No. 50; Plea Agreement, *id.*, ECF No. 53.) At a hearing on December 1, 2011, the Court sentenced Frost to a term of imprisonment of one hundred twenty months to be followed by a two-year period of supervised release. (Min. Entry, *id.*, ECF No. 65.)[1] Judgment was entered on the same day. (J. in a Criminal Case, *id.*, ECF No. 67.) Frost filed a notice of appeal on December 5, 2011. (Notice of Appeal, *id.*, ECF No. 69.) The Sixth Circuit affirmed. *United States v. Frost*, 521 F. App'x 484 (2013). The Supreme Court denied Frost's petition for a writ of certiorari on October 21, 2013. *Frost v. United States*, 134 S. Ct. 494 (2013).

B.     **Case Number 14-2896**

On November 17, 2013,[2] Frost filed a *pro se* Motion to File 28 U.S.C. § 2255 ("§ 2255 Motion"). (§ 2255 Mot., *Frost v. United States*, No. 2:14-cv-02896-JPM-cgc (W.D. Tenn.), ECF No. 1.) On December 3, 2014, Frost filed an amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Amended § 2255

---

[1] The 2010 edition of the *Guidelines Manual* was used to calculate Frost's sentencing range. (PSR ¶ 19.) Pursuant to § 2K2.1(c)(1)(A), cross-referencing § 2X1.1 and § 2A2.1 of the United States Sentencing Guidelines ("U.S.S.G."), the base offense level for unlawful possession of a firearm is 33 if the defendant used or possessed any firearm or dangerous weapon in connection with attempted murder. Frost received a two-level enhancement for obstruction of justice, U.S.S.G. § 3C1.1, resulting in a total offense level of 35. Given his criminal history category of V, the guideline sentencing range was 262-327 months. Frost, however, was subject to a mandatory maximum sentence of ten years, or 120 months, pursuant to 18 U.S.C. 924(a)(2).

[2] The envelope containing Frost's § 2255 Motion shows that Frost submitted his § 2255 Motion to prison mail staff on November 13, 2014. (Envelope, *Frost v. United States*, No. 2:14-cv-02896-JPM-cgc (W.D. Tenn.), ECF No. 1-1.) This is the operative date for purposes of determining whether Frost's Motion is time-barred. *See Towns v. United States*, 190 F.3d 468, 469 (6th Cir. 1999) (applying the mailroom filing rule of *Houston v. Lack*, 487 U.S. 266, 270-72 (1988), to § 2255 motions).

Motion"). (Am. § 2255 Mot., *id.*, ECF No. 3.) The amended motion presents the following issues:

1. "Application of the attempted murder gui[de]line" (Am. § 2255 Mot. at 5, *id.*, ECF No. 3);

2. "Cross-Reference enhanc[e]ment" (*id.* at 6); and

3. "Miscarriage of justice" (*id.* at 7).

On November 30, 2015, Frost filed a Notice of Default, which the Court construed as a motion seeking an order holding the Government in default. (Mot. for Default Default, *Frost v. United States*, No. 2:14-cv-02896-JPM-cgc (W.D. Tenn.), ECF No. 7.) In an order issued on December 1, 2015, the Court denied the motion for default and directed the Government to respond. (Order, *id.*, ECF No. 8.) The Government filed its Answer on January 21, 2016. (Answer, *id.*, ECF No. 12.) Frost did not file a Reply.

## II. LEGAL STANDARD AND ANALYSIS

"The Antiterrorism and Effective Death Penalty Act amended 28 U.S.C. § 2255 by adding a time-limit provision for Section 2255 motions. As amended, Section 2255 precludes a prisoner from filing Section 2255 motions more than one year after the conviction becomes final." *Hyatt v. United States*, 207 F.3d 831, 832 (6th Cir. 2000). Section 2255 now provides that the one-year limit begins from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). Frost's § 2255 Motion was filed over one year after his conviction became final. He argues, however, that his claims are not time-barred based on *Clay v. United States*, 537 U.S. 522 (2003). (Am. § 2255 Mot. at 13, *Frost v. United States*, No. 2:14-cv-02896-JPM-cgc (W.D. Tenn.), ECF No. 3.)

The one-year statute of limitations in 28 U.S.C. § 2255(f) is subject to equitable tolling under extraordinary circumstances. *Reed v. United States*, 13 F. App'x 311, 312 (6th Cir. 2001). When determining whether equitable tolling is appropriate, the Sixth Circuit applies a five-factor balancing test, which weighs:

> (1) the petitioner's lack of [actual] notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) the petitioner's diligence in pursuing his rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim.

*Moore v. United States*, 438 F. App'x 445, 449 (6th Cir. 2011) (quoting *Solomon v. United States*, 467 F.3d 928, 933 (6th Cir. 2006)). "Where, as here, the petitioner does not claim ignorance of the filing requirement, the court must focus its inquiry on the petitioner's diligence and 'the reasonableness of his ignorance of the effect of his delay.'" *Id.* (quoting *King v. Bell*, 378 F.3d 500, 553 (6th Cir. 2004)).

In his Amended § 2255 Motion, Frost does not assert any factual basis for equitable tolling, but refers to *Clay* to explain why the one-year statute of limitations does not bar his motion. (Am. § 2255 Mot. at 13, *Frost v. United States*, No. 2:14-cv-02896-JPM-cgc (W.D. Tenn.), ECF No. 3.) In *Clay*, the Supreme Court held that "[f]inality attached when this Court

affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." *Clay*, 537 U.S. at 527.

Frost's judgment became final on October 21, 2013 when the Supreme Court denied his petition for certiorari, but Frost did not deliver his § 2255 Motion to prison mailroom staff until November 13, 2014. Frost has failed to allege any basis for equitable tolling. Accordingly, the § 2255 Motion is DENIED as time-barred.[3]

## III.    APPEAL ISSUES

Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b). No § 2255 movant may appeal without this certificate.

A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right, and the COA must indicate the specific issue(s) which satisfy the required showing. 28 U.S.C. §§ 2253(c)(2) & (3). A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citation and internal quotation marks omitted); *see also Henley v. Bell*, 308 F. App'x

---

[3] The Court also notes that, on direct appeal, the Sixth Circuit rejected Frost's argument regarding the application of the cross-reference to attempted murder. *See Frost*, 521 F. App'x at 490-92. Because the Court did not err in finding that "Frost shot with the intent to kill," Frost cannot show an error of constitutional magnitude in the Court's application of the cross-reference to attempted murder. For the same reason, Frost cannot demonstrate that he suffered a "miscarriage of justice" because this Court considered the cross-reference to attempted murder in sentencing.

6

989, 990 (6th Cir. 2009) (per curiam) (same). A COA does not require a showing that the appeal will succeed. *Miller-El*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814-15 (6th Cir. 2011) (same). Courts should not issue a COA as a matter of course. *Bradley v. Birkett*, 156 F. App'x 771, 773 (6th Cir. 2005).

In this case, there can be no question that Movant's claims are time-barred for the reasons previously stated. Because any appeal by Movant on the issues raised in his § 2255 Motion does not merit further review, the Court DENIES a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. §§ 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions. *Kincade v. Sparkman*, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal *in forma pauperis* in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a). *Kincade*, 117 F.3d at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *See* Fed. R. App. P. 24(a) (4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED,

pursuant to Federal Rule of Appellate Procedure 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is DENIED.[4]

IT IS SO ORDERED this 29th day of February, 2016.

/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE

---

[4] If Movant files a notice of appeal, he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within 30 days.